UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | No. 6:18-CR-17-REW-HAI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| TIMOTHY HAVENS, | ) | AND ORDER |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

The narrow question before the Court is whether the First Step Act of 2018's broadening of 18 U.S.C. § 3553(f) (*i.e.*, the statutory "safety valve") applies to a defendant who pleaded guilty before the Act became law but was sentenced after that date. The answer turns on the meaning of "conviction entered" in § 402(b) of the Act. Because the Court concludes that conviction entry, in context, corresponds with pronouncement of guilt rather than date of judgment, it finds the § 402 changes inapplicable in this pre-Act plea scenario.

**I.**

Timothy Havens pleaded guilty to one count of possession with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1). On October 4, 2018, United States Magistrate Judge Ingram conducted the Rule 11 hearing. *See* DE #21 (Plea Agreement); DE #22 (Rearraignment Minutes). Judge Ingram recommended acceptance of Havens's plea, *see* DE #23 (R&R), and neither Havens nor the United States objected. Judge Van Tatenhove, then the district judge on the case,[1] adopted Judge Ingram's R&R, accepted Havens's

---

[1] Judge Van Tatenhove transferred this case to the undersigned on January 11, 2019. DE #28.

1

guilty plea, and formally adjudged Havens guilty of the offense on October 23, 2018. *See* DE #24 ¶ 2 ("Defendant Timothy Havens is **ADJUDGED** guilty of Count 1 of the Indictment[.]").

On December 21, 2018, President Trump signed into law the First Step Act of 2018 (Pub. L. No. 115-391, 132 Stat. 5194 (2018)). Title IV of the Act, labeled "Sentencing Reform," did just that. It reduced certain mandatory minimum penalties in § 841, diminished the severity of offense "stacking" under 18 U.S.C. § 924(c), retroactively applied the Fair Sentencing Act of 2010, and— relevant here—broadened the existing § 3553(f) safety valve, offering more offenders relief from specific mandatory minimum incarceration terms. Because Havens has more than one criminal history point, he fails to qualify for the statutory safety valve under the pre-First Step Act version of § 3553(f). Given the Act's changes to § 3553(f)'s requirements, however, Havens objected to the Presentence Investigation Report's failure to apply the new statutory safety valve. *See* DE #31. Consistent with Department of Justice policy, the United States agreed with Havens and argued that the modified safety valve should apply. *See* DE #32. Both parties, and the Court, acknowledge that Havens satisfies all qualifications of § 3553(f) as amended. Thus, the sole issue is whether Congress intended amended § 3553(f) to extend to defendants adjudged guilty (via plea or verdict) prior to December 21, 2018, though not yet sentenced by First Step Act passage.

**II.**

Section 402 of the First Step Act, titled and effecting a "Broadening of Existing Safety Valve," provides: "APPLICABILITY.—The amendments made by this section shall apply only to a conviction entered on or after the date of enactment of this Act." § 402(b), 132 Stat. at 5221. The Act does not define or further describe the phrase "conviction entered." If the date that a

"conviction [is] entered" refers to the entry[2] of a guilt finding, then, by its terms, the First Step Act's § 3553(f) changes do not apply to defendants who pleaded guilty before December 21, 2018. However, if conviction entry equates to entry of judgment (which encompasses both the guilt finding or verdict and the sentence, *see* Fed. R. Crim. P. 32(k)(1))—as Havens and the United States argue—then the December 21 safety valve amendment applies to defendants already adjudged guilty but awaiting sentencing as of that date.

"When a term goes undefined in a statute, we give the term its ordinary meaning[,]" *Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997, 2002 (2012), as commonly understood at the time of enactment, *see Keeley v. Whitaker*, 910 F.3d 878, 882 (6th Cir. 2018). The word "conviction" is defined as either "[t]he act or process of judicially finding someone guilty of a crime; the state of having been proved guilty[,]" or "[t]he judgment (as by a jury verdict) that a person is guilty of a crime." *Conviction*, Black's Law Dictionary (10th ed. 2014), *available at* Westlaw.[3] In case law, "[t]he word 'conviction' is a chameleon[,]" lacking one "settled meaning[.]" *Davis v. Prof'l Representatives Org.*, 666 F. App'x 433, 439 (6th Cir. 2016) (quoting *Harmon v. Teamsters, Chauffeurs & Helpers Local Union 371*, 832 F.2d 976, 978 (7th Cir. 1987)). At the time Congress enacted the First Step Act, the Supreme Court had recognized "that the word 'conviction' can mean either the finding of guilt or the entry of a final judgment on that finding."

---

[2] The Court treats the word "entered," as used in § 402(b), as simply referring to the Clerk's ministerial act of filing a document (such as an order accepting a plea, any other order, or the final judgment) in the case record. *See* Fed. R. Crim. P. 55 ("The clerk must enter in the records every court order or judgment and the date of entry."); *see also* Fed. R. Civ. P. 32(k)(1) ("The judge must sign the judgment, and the clerk must enter it.").

[3] *Cf. Judgment*, Black's Law Dictionary (10th ed. 2014), *available at* Westlaw ("judgment of conviction (1806): 1. The written record of a criminal judgment, consisting of the plea, the verdict or findings, the adjudication, and the sentence . . . 2. A sentence in a criminal case. *See* sentence."). This definition of "judgment of conviction" is consistent with Rule 32: "In the judgment of conviction, the court must set forth the plea, the jury verdict or the court's findings, the adjudication, and the sentence." Fed. R. Crim. P. 32(k)(1).

*Deal v. United States*, 113 S. Ct. 1993, 1996 (1993).[4] Given the "fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation, [it] must be drawn from the context in which it is used." *Id.* The Court thus looks first to the language of the First Step Act for contextual insight into the meaning of the word "conviction" in § 402(b), bearing in mind relevant overarching principles of statutory interpretation.

The Supreme Court undertook a like analysis in the context of the Fair Sentencing Act of 2010, deciding whether the 2010 Act's provisions reducing the crack-to-powder cocaine sentencing ratio applied to crimes committed pre-enactment: "The underlying question before us is one of congressional intent as revealed in the Fair Sentencing Act's language, structure, and basic objectives. Did Congress intend the Act's more lenient penalties to apply to pre-Act offenders sentenced after the Act took effect?" *Dorsey v. United States*, 132 S. Ct. 2321, 2326 (2012). Acknowledging the influence of the general federal saving statute, *see* 1 U.S.C. § 109 (1871), the Court "recognize[d] that, because of important background principles of interpretation, we must assume that Congress did *not* intend those penalties to apply unless it clearly indicated to the contrary." *Dorsey*, 132 S. Ct. at 2326 (emphasis in original). Accordingly, a later statute's more lenient penalties[5] apply to conduct predating the statute's enactment only where "the will of Congress as manifested either expressly or by necessary implication in [the] subsequent enactment[]" so provides. *Id.* at 2331 (quoting *Great Northern Ry. Co. v. United States*, 28 S. Ct. 313, 316 (1908)). "[T]he Court has described the necessary indicia of congressional intent by the

---

[4] *Deal* has special relevance because one of the sentencing reforms in Title IV is a statutory change to the interpretation of § 924(c) by the *Deal* Court. This Court can safely assume Congress had in mind the dynamics of *Deal*.

[5] Of course, the *Ex Post Facto* Clause would regulate the imposition of later *harsher* penalties.

terms 'necessary implication,' 'clear implication,' and 'fair implication,' phrases it has used interchangeably." *Id.* at 2332 (citations omitted).

*Dorsey* dealt with a statute utterly silent on the timing of its applicability. The Court carefully noted that it worked by probing the text for the intent of Congress; *Dorsey* insisted on assurance that ordinary interpretive considerations "point clearly" to the conclusion that Congress intended to apply "new penalties to a set of pre-Act offenders." *Id.* at 2332. Ultimately, the Court identified six considerations in finding new-law applicability. Those included thorough review of the Sentencing Reform Act (which required that a sentencing court apply Guidelines in effect at the time of sentencing) and the Fair Sentencing Act's emergency Guidelines amendment authorization (showing that Congress knew the Guidelines timing issue and intended to assure concurrent leniency for newly sentenced offenders). *Id.* at 2332–33.

Unlike the Fair Sentencing Act of 2010, the First Step Act lacks clear or even "fair implication" of an intent to apply the more lenient safety valve to those pronounced guilty pre-Act; rather, the language and structure of the First Step Act strongly suggest the opposite conclusion. Within the Sentencing Reform Title of the First Step Act, Congress included three express "applicability" provisions. In both §§ 401 and 403 (the provisions governing § 841 mandatory minima and § 924(c) stacking, respectively), Congress used the following language: "APPLICABILITY TO PENDING CASES.—This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment." §§ 401(c) & 403(b), 132 Stat. at 5221, 5222. This describes the precise timeline in Havens's case—offense commission (and Havens's guilty plea) occurred pre-Act, but "a sentence for the offense ha[d] not been

imposed as of" December 21, 2018.[6] The applicability provision of the new safety valve is dramatically different: "The amendments . . . shall apply only to a conviction entered on or after the date of enactment of this Act." *Id.* at § 402(b).[7]

It is counterintuitive—and contrary to statutory interpretation directives—to assume that Congress intended the applicability provisions of §§ 401, 402, and 403 to convey the same meaning despite their very different phrasing. *See, e.g.*, *Keeley*, 910 F.3d at 884 ("Under accepted canons of statutory interpretation, we must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous."). Within Title IV's applicability provisions, Congress references three events in the criminal process—offense commission, conviction entry, and sentence imposition. As a matter of common understanding, judgment entry generally immediately follows sentence imposition, and the two are conceptually tethered. *See* Fed. R. Civ. P. 32, governing "Sentencing and Judgment," within Title VII titled "Post-Conviction

---

[6] Indeed, Havens, in a different sentencing aspect, benefited from the mandatory minimum changes under § 401; his § 841(b)(1)(A) 20-year minimum automatically became a 15-year minimum, and, ultimately, no longer applied as a result of § 401's introduction and definition of the phrase "serious drug felony" in 21 U.S.C. § 802, which replaced the phrase "felony drug offense" in § 841(b)(1)(A).

[7] Treating "conviction entered" as equivalent to "judgment of conviction entered" can create some mind-bending possibilities. Section 3553 regulates "Imposition of Sentence," and § 3553(f) is the safety valve, which directs (when it applies) how a court shall "impose a sentence." Logically, if "conviction entered" means guilt finding, it is no stretch to treat the new safety valve as applying to determine imposition of sentence as to the finding. It is more difficult if "conviction entered" means judgment of conviction because the judgment is the result of sentencing, and § 3553(f) is part of the process of sentencing. Thus, a court would not logically apply a sentencing statute to the judgment itself; the statute would apply to the process of sentencing, which culminates in the judgment. The awkward verbiage is simply another reason the Court has difficulty in thinking Congress clearly meant what the parties advocate. Finally, use of the adverb "only" in the key phrase—that the amendments "shall apply **only** to a conviction entered" post enactment—linguistically indicates the need for narrower instead of broader application. § 402(b), 132 Stat. at 5221 (emphasis added).

Procedures"; *Sasser v. United States*, 352 F.2d 796, 797 (6th Cir. 1965) ("[I]t is true that the pronouncement of sentence represents the judgment of the court and that the order of judgment is merely evidence of the sentence[.]"); *Jenkins v. United States*, 555 F.2d 1188, 1189 (4th Cir. 1977) (citations omitted) (recognizing the general rule that "in a criminal case the sentence is the judgment[,]" but nevertheless distinguishing the word "conviction" in the at-issue statute (defined as "the judgment on a verdict or a finding of guilty . . .") from "sentence" based on the statute's legislative history); *Yeloushan v. United States*, 313 F.2d 303, 304 (5th Cir. 1963) (quoting *Parr v. United States*, 76 S. Ct. 912, 916 (1956)) (noting that, for appeal purposes, "'[f]inal judgment in a criminal case means sentence'" and "'[t]he sentence is the judgment[]'"). To equate conviction with judgment would collapse any timing distinction between entry of conviction and imposition of sentence and thus fail to give deliberate effect to the differing contemporaneous articulations Congress chose to use. Construing "conviction" as pronouncement of guilt within the meaning of § 402(b) best preserves the apparent textual differences between Title IV's applicability provisions.

The Court also finds the First Step Act's § 924(c) fix instructive. *Deal* had interpreted § 924(c)(1)(C) to require penalty stacking when a jury made sequential, cascading guilt findings on multiple § 924(c) counts within one Indictment. *See* 113 S. Ct. at 1996. The Court treated each guilt finding as a "conviction" for purposes of the phrase "second or subsequent conviction." *See id.* ("In the context of § 924(c)(1), we think it unambiguous that 'conviction' refers to the finding of guilt by a judge or jury that necessarily precedes the entry of a final judgment of conviction."). The First Step Act reversed *Deal*. The Act now allows the stacked enhancement only as to a § 924(c) "violation . . . that occurs after a prior conviction under this subsection has become final." *See* § 403(a), 132 Stat. at 5222. Thus, Congress, within the First Step Act, and within the same

Title addressing "Sentencing Reform," contemporaneously dealt with the term "conviction" in a context that clearly meant only finding of guilt (the jury's verdict, as used in *Deal*). Congress fixed *Deal* by requiring conviction finality. However, in the neighboring § 402 of the First Step Act, Congress used no like qualifier as to the term "conviction," a term it knew in § 403 had the meaning used by *Deal*. This signifies that the word "conviction," without adornment, means guilt finding.

Equally important is the language Congress *omitted* in Title IV of the First Step Act. In finding the requisite indicia of Congressional intent in the Fair Sentencing Act of 2010, the *Dorsey* Court heavily relied on the 2010 Act's inclusion of Guidelines "emergency amendment" authority, "allowing 'the Commission to incorporate the statutory changes' in the Guidelines while 'minimiz[ing] the lag between any statutory and guideline modifications for cocaine offenders.'" 132 S. Ct. at 2329 (citation omitted).[8] Against the backdrop of the Sentencing Reform Act's command to apply the Guidelines in effect at the time of sentencing, the *Dorsey* Court viewed this inclusion of emergency amendment authority as an indicator of Congress's intent to broadly apply the 2010 Act's more lenient penalties. *Id.* at 2332–33. The First Step Act provides no such emergency amendment authority. Moreover, the Fair Sentencing Act of 2010 lacked any instruction concerning its applicability, whereas the First Step Act contains the varying applicability provisions previously discussed. The First Step Act's lack of amendment authority— and the presence of its express applicability directives—weigh against finding the "fair

---

[8] Is this (safety valve extension) different from *Dorsey* (which involved lowering of the crack-to-powder ratio)? In a sense, the safety valve is not a direct punishment; rather, it is a path to a lower punishment for a given "offense" if specific criteria exist. However, if the § 841 penalty is a "liability incurred" at offense commission, then the safety valve extension would, by operation and its repeal of the prior version, "have the effect to release or extinguish" a penalty otherwise applicable. *See* 1 U.S.C. § 109. As such, the Court views *Dorsey* as dictating the proper analysis of when to apply a new statute that ameliorates the penalty for a completed offense.

implication" of Congressional intent that *Dorsey* discerned in the Fair Sentencing Act. *See id.* at 2332.[9]

### III.

To date, two district courts have considered this precise issue, and both have reached the same conclusion the Court does here. In a case from this District, Judge Reeves concluded that, despite party reliance—as here—on the policy goal of avoiding unwarranted sentencing disparities, as well as the First Step Act's general theme of greater leniency in sentencing, the language implementing the safety valve changes controlled in the pre-Act plea scenario. *See United States v. Slone*, No. 5:17-135-DCR-4, 2019 WL 982851, at *8 (E.D. Ky. Feb. 28, 2019) ("The government relies on . . . the need to avoid unwarranted sentencing disparities. However, this policy consideration cannot override Congress's plain instructions regarding the 2018 Act's applicability."). Similarly, a district judge in Maine found parties' like policy arguments unavailing in light of the applicability language in Title IV of the First Step Act. *See United States v. Tracy*, No. 1:18-cr-00081-JAW, 2019 WL 1409841, at *8 (D. Me. March 28, 2019) ("Though these policy issues are confounding, the Court is still obligated to interpret statutory language as it

---

[9] *Dorsey* also relied in part on disparities a different result would create, and the parties here argued as well that using conviction entry instead of judgment date would work inequities. The Court sees the argument but also notes that any dateline drawn for a statutory change not fully retroactive has winners and losers. Here, Havens entered a valid guilty plea well before the First Step Act came into being. Despite that, he got the benefit of § 401, avoiding a harsh 20-year minimum. It is true that vagaries in plea timing could create disparity. However, quirks in sentencing timing would yield similar distinctions as to §§ 401 and 403. Congress picked its language and created the categories. While *Dorsey* found that disparities, in context, signaled lenient intent, none of the other key *Dorsey* factors (the statutory silence, Guidelines status, and the emergency amendment authorization) point that way here. A policy argument simply will not trump otherwise clear text.

9

appears; it is not within its purview to make the policy judgments that Congress was elected to make.").[10]

Given the language and structure of Title IV, the Court is likewise unable to find any textual "fair implication" of Congress's intent to apply the new, more lenient variant of § 3553(f) in this circumstance. The differing applicability provisions—analyzed in light of background interpretation principles and, particularly, the Supreme Court's decision in *Dorsey*—lead the Court to conclude that "conviction entered" in the context of § 402(b) correlates with the entry of a finding of guilt, rather than entry of judgment. The sincere and important contra policy arguments cannot override or transform the text, which clearly points against the advocates' view. Accordingly, absent circuit or Supreme Court authority, the Court is bound by the mandatory minimum incarceration term.[11]

**IV.**

For these reasons, the Court must **OVERRULE** Defendant's objection to the Presentence Investigation Report (DE #31).

This the 17th day of April, 2019.



Signed By:
*Robert E. Wier*
**United States District Judge**

---

[10] Unlike this case and *Slone*, *Tracy* presented a variance question, rather than a mandatory minimum issue—Tracy and the United States agreed that a two-level downward variance was appropriate to reflect the First Step Act's safety valve amendments, despite the corresponding Guideline remaining unchanged. In assessing variance propriety, the *Tracy* court engaged in thorough treatment of the statutory interpretation issue presented here. *See* 2019 WL 1409841, at *3.

[11] The Court notes, however—as stated fully on the record at Havens's sentencing hearing—that, if it could have applied § 402 of the First Step Act, Havens would have qualified for the new § 3553(f), and the Court would have chosen to impose a sentence below the ten-year mandatory minimum.